662

## KROLLER et al. v. DELAWARE RIVER STEEL CO.

District Court, E. D. Pennsylvania. June 4, 1929.

No. 12590.

Francis Rawle and Joseph W. Henderson, both of Philadelphia, Pa., for plaintiff.

William J. Conlen, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. A nonsuit was entered at the trial when the plaintiff rested its case. The plaintiff's theory of the cause of action is very definite and clearcut in its statement. The plaintiff is a dealer, among other things, in iron ore, which is shipped by vessels. The defendant is a steel company and in the market to purchase ore.

The plaintiff entered into a charter party with a vessel by which the latter was to carry a cargo of ore to the port of Philadelphia, its destination being the city of Chester, where the defendant company has its plant. The charter party contained the usual provision that the vessel should report upon its arrival at its port of destination and should be discharged within a given number of days and unloaded at a rate of discharge of 1,500 tons per day.

The plaintiff entered into an agreement with the defendant by which the plaintiff undertook to deliver the ore to the defendant on board defendant's cars at its plant, and it was further agreed that the defendant should unload the cargo and place it in the cars where it was to be delivered at the rate of 1,000 tons per day, for which the defendant was to receive a stipulated compensation. The vessel arrived and reported its readiness to discharge, and the cargo was unloaded by the defendant in accordance with its contract so to do.

The defendant's plant is located on the river front, and it maintains there a wharf on one side of which vessels may discharge. When the carrying ship, in this instance, reported its arrival and readiness to discharge its cargo, the wharf of the defendant was occupied by a previously arrived vessel, and some days elapsed before the vessel carrying the cargo in question could be berthed. The further consequence was that demurrage charges were incurred and collected by the ship from the plaintiff in accordance with the charter party contract. It is for the demurrage thus paid that the present suit has been brought.

The proposition advanced by the plaintiff is that the contract here was the ordinary c. i. f. contract, and that when the bill of lading and accompanying drafts were indorsed over by the plaintiff to the defendant the latter assumed all the obligations of the charter party, including the obligation to pay demurrage.

The position is taken that, when the consignee of a cargo to be thus carried sells the cargo to another, the vendor fulfills all the obligations of a vendor by putting into the hands of the vendee the evidences of title to the cargo, the delivery of these papers being in effect the delivery of the cargo thus sold, and that thereafter the vendee is the consignee and liable to all intents and purposes as fully as if such vendee had been a party to the charter party contract.

We see no need to enter into the question of the soundness of these propositions, for the reason that we do not regard this as the case before us. There was no agreement here upon the part of the vendee to take over this cargo in the vessel when it arrived. The vendor here agreed to deliver the ore in question, not at the port of Philadelphia, but on the cars of the defendant company. It follows, therefore, that it was the duty of the plaintiff to take care of the cargo upon its arrival and to unload the vessel and give it its discharge. There was no obligation on the part of the defendant to provide a berth or other place for the discharge of the cargo. It is true that the defendant by its contract with the plaintiff agreed to assume in part the obligation of the plaintiff to discharge the vessel. Whatever the defendant thus agreed to do it was of course bound to do, and in this respect all that it agreed to do was the actual work of unloading at the rate of a 1,000 tons per day. If it failed to unload at this rate, it then agreed to pay to the plain-

tiff whatever demurrage was payable to the vessel under its charter party. In this view of the contractual rights of the parties, the plaintiff might have unloaded the ship upon lighters or at another wharf, in which event the plaintiff would have been bound to have taken the ore from the place where unloaded to the place of delivery provided for in the contract and could not have charged the expense of this transportation to the defendant. It might, if it so elected, as it did elect, to await the opportunity to discharge the cargo at the defendant's wharf; the demurrage payable to the ship because of this delay being presumably less than the discharge of the cargo upon lighters or at some other wharf. Had the defendant failed to comply with the contract which it made, it might then have been answerable not merely for the demurrage thus incurred by its delay, but under the terms of its contract have been answerable for the demurrage charges provided for in the charter party. There was a distinct and clear admission, however, upon which the nonsuit was granted, that the defendant had in all respects complied with its contract made with the plaintiff. Having thus done all it agreed to do, we held at the trial, and still adhere to this view, that the defendant was not further answerable to the plaintiff.

The motion to take off the nonsuit is denied, with an exception allowed to the plaintiff.